


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| vs. | § | Criminal Action No. 3:22-581-MGL-1 |
| | § | |
| DOMINIC SINCLAIR ERVIN, | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**
**DENYING DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

## I. INTRODUCTION

Pending before the Court is Defendant Dominic Sinclair Ervin's (Ervin) motion for compassionate release. Having carefully considered the motion, the response, the reply, the record, and the applicable law, it is the judgment of the Court the motion will be denied.

## II. FACTUAL AND PROCEDURAL HISTORY

Pursuant to a Federal Rule of Civil Procedure 11(c)(1)(C) plea agreement, Ervin pled guilty to possession with intent to distribute a quantity of a mixture or substance containing a detectable amount of methamphetamine and a quantity of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

At sentencing, Ervin received a total offense level of twenty-seven and three criminal history points, which resulted in a criminal history category of II. Together, this meant Ervin's

guideline range was seventy-eight to ninety-seven months of imprisonment. The Court, however, adopted the sentence stipulation contained in the parties' Rule 11(c)(1)(C) plea agreement and sentenced Ervin to a total of 132 months of imprisonment, followed by three years of supervised release. Ervin has a projected release date of October 3, 2030.

Ervin recently filed this motion for compassionate release. The government responded, and Ervin replied. Having been fully briefed on the relevant issues, the Court will now adjudicate the motion.

## III. STANDARD OF REVIEW

After a defendant has exhausted his administrative remedies, "[a] district court analyzes [his] compassionate release motion in two steps." *United States v. Woody*, 115 F.4th 304, 310 (4th Cir. 2024).

"First, the [C]ourt must determine [the defendant] is eligible for a sentence reduction because he has shown 'extraordinary and compelling reasons' for release." *United States v. Centeno-Morales*, 90 F.4th 274, 279 (4th Cir. 2024) (citing *United States v. Hargrove*, 30 F.4th 189, 194–95 (4th Cir. 2022)). In doing so, the Court must consider whether the extraordinary and compelling reasons set forth by the defendant are "consistent with applicable policy statements issued by the Sentencing Commission[.]" 18 U.S.C. § 3582(c)(1)(A).

The relevant policy statement identifies six circumstances that, individually or in combination, may provide extraordinary and compelling reasons for a sentence reduction: (1) certain medical circumstances of the defendant; (2) the defendant's age and conditions related thereto; (3) the defendant's family circumstances; (4) the fact the defendant, while in custody, was the victim of sexual or physical abuse committed by, or at the direction, of a correctional officer,

(5) the presence of "any other circumstance or combination of circumstances . . . similar in gravity to" the circumstances enumerated in paragraphs (1) through (4); and (6) in some circumstances, where there has been a qualifying change in law. U.S.S.G. § 1B1.13(b).

"Second, the [C]ourt [must] consider[] whether the 18 U.S.C. § 3553(a) [(Section 3553(a)] sentencing factors support relief." *Moody*, 115 F.4th at 310 (citing *United States v. Bond*, 56 F.4th 381, 383 (4th Cir. 2023)). !!"'District courts 'enjoy broad discretion' in evaluating the [Section] 3553(a) factors when deciding a motion for compassionate release." *Id.* (quoting *United States v. Bethea*, 54 F.4th 826, 834 (4th Cir. 2022)).

## IV. DISCUSSION AND ANALYSIS

As an initial matter, Ervin has exhausted his administrative remedies. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining a defendant may bring a motion for compassionate release only after he has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier"). The Court will thus proceed to consider the merits of his motion.

### *A. Whether Ervin presents extraordinary and compelling reasons warranting a sentence reduction under 18 U.S.C. § 3582(c)(1)(A)*

#### *1. Whether Ervin has presented extraordinary and compelling reasons based on his medical conditions*

Ervin, who is forty years old, argues he is entitled to compassionate release because he suffers from polycystic kidney disease and hypertension, as well as anxiety, obsessive-compulsive, and adjustment disorders. He maintains these conditions—particularly his kidney disease, which causes painful symptoms and can reduce his maximum lifespan to between forty and sixty years—require long-term or specialized care the Bureau of Prisons (BOP) is failing to provide.

The government, on the other hand, notes Ervin is undiagnosed with a terminal illness, his medical conditions "appear to be well-controlled within the institution[,] and [his medical records indicate] he receives treatment in response to his complaints and ailments . . . ." Government's Response at 11.

As is relevant here, extraordinary and compelling reasons exist with respect to a defendant's medical condition where the defendant is "suffering from a medical condition that requires long-term or specialized medical care that is not being provided and without which [he] is at risk of serious deterioration in health or death." U.S.S.G. § 1B1.13(b)(1)(C).

Ervin neglects to set forth any evidence indicating he has been diagnosed with obsessive-compulsive disorder or adjustment disorder. Further, although Ervin was diagnosed with anxiety disorder in 2018, he has since been prescribed medication—some of which he actually misused—and referred for additional services, none of which he alleges have been insufficient.

Turning to Ervin's polycystic kidney disease, medical records indicate the condition causes him to suffer from hepatic and renal cysts, hypertension, hematuria, abdominal pain, and urinary tract infections. Even assuming the disease requires Ervin to receive some long-term or specialized medical care, however, the Court is convinced the BOP is adequately providing such care. Indeed, Ervin has been prescribed medication for all his treatable symptoms.

In February 2025, Ervin reported to the emergency room with abdominal pain. The provider ordered a CT scan, which showed "[i]nnumerable hepatic and bilateral renal cysts, consistent with/most likely representing autosomal dominant polycystic kidney disease. Most cysts are simple, however there are several intermediate density cysts within predominately the lateral right kidney, one at the left lower pole as well." Medical Records from February 2025 Visit to Northwest Medical Center. Accordingly, the provider advised Ervin to take medication as

recommended by BOP Health Services and to contact a physician if his symptoms worsened or lasted longer than two or three days. The provider also noted, "[i]f presumptive flank pain persists, consider follow-up renal protocol abdominal MRI." *Id.* BOP Health Services thereafter prescribed Ervin pain medication.

One month later, Ervin underwent an abdominal MRI, presumably due to persistent pain after his CT scan. The MRI revealed "[f]indings consistent with autosomal dominant polycystic kidney disease" and "[n]o worrisome renal lesions." Medical Records from March 2025 Visit to Northwest Medical Center. Though the MRI showed multiple indeterminate splenic lesions, a doctor merely "recommend[ed] follow-up imaging in 6-12 months . . . to confirm stability." *Id.* Currently, a follow-up MRI is scheduled for October.

In April 2025, Ervin returned to the emergency room with abdominal pain and hematuria. He underwent another CT scan, which revealed "[n]o significant interval changes" since the February CT scan. Medical Records from April 2025 Visit to Northwest Medical Center. Ervin was thus diagnosed with a urinary tract infection and prescribed antibiotics. Ervin was told to return to the emergency room for any new or worsening symptoms, and he was advised to schedule a follow-up appointment with urology in three to five days. Subsequent lab testing indicated significant improvement, and BOP Health Services is scheduling Ervin a nephrology consultation.

Although the Court is sympathetic to Ervin's diagnosis, it is nevertheless convinced the BOP is adequately treating his symptoms through intermittent diagnostic imaging and medication. Accordingly, the Court is unable to conclude his medical conditions constitute extraordinary and compelling reasons under the policy statement.

### *2. Whether Ervin has presented extraordinary and compelling reasons based on the catch-all category*

Ervin alternatively argues his participation in a gang drop-out program while in custody has endangered his life and thus falls within the policy statement's catch-all category.

The government, however, notes Ervin completed the drop-out program in 2014 at United States Penitentiary Hazleton in West Virginia. The government explains Ervin has since been transferred to Federal Correctional Institution Tucson in Arizona, a facility that is designated to receive, house, and protect participating inmates. Moreover, the government emphasizes Ervin "committed the criminal acts in the instant indictment after his participation in the program . . . ." Government's Response at 12 (emphasis omitted).

As the Court stated above, in addition to the enumerated extraordinary and compelling reasons, the policy statement contains a "catch-all" category. Under this category, extraordinary and compelling reasons exist where the defendant "presents any other circumstances or combination of circumstances . . . . similar in gravity to" those "described in paragraphs (1) through (4)." U.S.S.G. § 1B1.13(b)(5).

For the reasons set forth by the government, the Court is persuaded Ervin's completion of the gang drop-out program is dissimilar in gravity to the circumstances described in paragraphs (1) through (4) of the policy statement. Indeed, Ervin has neglected to demonstrate any legitimate concern for his safety, and he completed the drop-out program five years before the instant offense. The Court therefore concludes he has failed to establish extraordinary and compelling reasons warranting compassionate release.

### *B. Whether the Section 3553(a) factors weigh in favor of a sentence reduction*

Even if the Court determined extraordinary and compelling circumstances exist in this case, analysis of the Section 3553(a) factors would nevertheless preclude any reduction in Ervin's

sentence. *See* 18 U.S.C. § 3582(c)(1)(A) (explaining the Court may grant compassionate release only "after considering the factors set forth in [S]ection 3553(a) to the extent that they are applicable"). These factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > (B) to afford adequate deterrence to criminal conduct;
> > (C) to protect the public from further crimes by the defendant;
> > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for [the offense] . . . ;
> (5) any pertinent policy statement . . . issued by the Sentencing Commission . . . [;]
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

After law enforcement suspected Ervin, a convicted felon, was selling drugs from his home, they conducted a controlled purchase using an undercover investigator. During the purchase, Ervin was observed smoking a marijuana blunt and utilizing a digital scale to weigh out 0.51 grams of heroin for the undercover investigator. Later that day, during a lawful traffic stop, officers discovered Ervin to be in possession 16.5 grams of methamphetamine, 29.17 grams of heroin, large amounts of marijuana, and a pistol. A later search of Ervin's home revealed 138.68 grams of marijuana, 38.945 grams of heroin, and 0.177 grams of fentanyl. Ervin also threatened to shoot several individuals, including children. And, he was subsequently found in possession of two firearms, one of which was capable of accepting a large capacity magazine.

Ervin has a developed criminal history, which includes convictions for driving under suspension, simple possession of marijuana, ill treatment of animals, assault and battery of a high and aggravated nature, and using a firearm in furtherance of a drug trafficking crime. He has also been arrested numerous times for firearm- and drug-related offenses.

Ervin has taken steps toward rehabilitating himself while in custody. But, he also received a disciplinary infraction in September 2024 for possessing drugs and/or alcohol. And, though the Court is pleased with Ervin's rehabilitation efforts and encourages him to continue them, he has done no more than the Court hopes of every defendant. *Cf.* 28 U.S.C. § 994(t) (explaining "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason").

Thus, upon balancing the Section 3553(a) factors, the Court determines Ervin is unentitled to a sentence reduction. Ervin's current sentence is sufficient but no longer than necessary to promote respect for the law, provide adequate deterrence, and reflect the seriousness of his offense, and it is a just punishment in this case. The Court will therefore deny his motion for compassionate release.

## V. CONCLUSION

Wherefore, based on the foregoing discussion and analysis, it is the judgment of the Court Ervin's motion for compassionate release, ECF No. 114, is **DENIED**.

**IT IS SO ORDERED.**

Signed this 23rd day of July 2025, in Columbia, South Carolina.

s/ Mary Geiger Lewis
MARY GEIGER LEWIS
UNITED STATES DISTRICT JUDGE